FILED
COURT OF APPEALS
DIVISION II

2013 MAR 12 AM 8: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41904-1-II |
| Respondent, | |
| v. | |
| THOMAS R. STEPHENS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — A jury found Thomas Stephens guilty of second degree assault with a deadly weapon, witness tampering, and violation of a no contact order. On appeal he argues (1) the trial court violated his right to a unanimous verdict by failing to instruct the jury that it must be unanimous on which weapon he used to commit the assault; (2) the trial court violated his right to a public trial by closing the courtroom to replay an admitted audio recording for the jury during a pause in deliberations, and by responding to a jury inquiry without a public hearing; and (3) the trial court violated his right to be present at trial by responding to the same jury inquiry in his absence. We affirm.

## FACTS

In July 2010, a neighbor of Stephens and Stephens's wife, Danielle, called 911 to report a domestic violence incident at Stephens's residence. Police arrived at the residence, finding Danielle visibly shaking and crying. Danielle told the police Stephens had stabbed her in the back.

At the hospital the same day, Danielle told a nurse practitioner that Stephens had hit her and held a knife to her throat but had not cut her. The nurse practitioner observed injuries consistent with this statement.

The next day, Trooper Russell Sanders stopped Stephens's vehicle and arrested him. Trooper Sanders obtained a search warrant for Stephens's vehicle and seized a knife found in the glove box. While in jail, Stephens made repeated phone calls to Danielle, in violation of a no contact order, attempting to influence her to not testify against him.

The State accordingly charged Stephens with second degree assault with a deadly weapon, witness tampering, and violation of a no contact order. On the assault charge, the State alleged sentence enhancements for Stephens being armed with a deadly weapon, for domestic violence, and for committing a violent offense against a victim he knew was pregnant.

At trial, the trial court admitted into evidence and the jury heard an audio recording of the 911 call that brought the police to Stephens's residence. The trial court also admitted photographs of a knife found in Stephens's bathroom, but the State did not attempt to admit the knife itself. The trial court admitted the knife found in Stephens's glove box. Further, the State elicited the testimony of Deputy Mark Millet that, in August 2010, Danielle gave him two additional knives from her residence. Neither of these knives was admitted.[1]

During closing arguments, the State discussed all four knives, but it did not argue that Stephens used any particular knife to commit the assault against Danielle. The trial court instructed the jury that it must return a unanimous verdict. And the trial court properly instructed

---

[1] The State sought to admit one of the knives that Danielle gave to Deputy Millet, but the trial court sustained Stephens's objection that such admission was improper during rebuttal. The State did not seek to admit the other knife that Danielle gave to Deputy Millet.

No. 41904-1-II

the jury on the elements of second degree assault with a deadly weapon. The trial court did not instruct the jury that it must unanimously agree on which deadly weapon Stephens used during the assault.

During jury deliberations, the jury sent a note to the trial court requesting to hear the recording of the 911 call again. The trial court responded, "This will be allowed, but we will bring you back into court to do this as soon as arrangements can be made." Clerk's Papers (CP) at 34.

On the record, outside the presence of the jury, the trial court stated,

> I think probably since this is a sort of substitute for having the jury hear this in the jury room we do it in the courtroom to have a little more control of it, but I think I should ask counsel who are not involved in the case to leave and we'll clear the courtroom. . . .
>
> I think, counsel, there would be circumstances under which we would set this up in the jury room and simply have the bailiff start it. But since we have to stop at a very precise point, I think he [sic] we better err on the side of caution.

Report of Proceedings (RP) (Jan. 14, 2011) at 2-3. Stephens's counsel responded, "Yeah, definitely." RP (Jan. 14, 2011) at 3.

The trial court then closed the courtroom and brought the jury in. The trial court told the jury,

> The last question we got was a request to hear the 911 tape again. We really don't have the ability to do that in the jury room so we need to do it in the courtroom. I have closed the courtroom to try to facilitate doing this as closely as you would in your jury deliberations room.

RP (Jan. 14, 2011) at 3. The trial court then replayed the recording for the jury, after which the jury returned to deliberations.

3

The jury sent a second note to the trial court asking, "Can we look at the blade of the knife?" CP at 35. Five minutes after the inquiry was made, the trial court replied in writing, "Yes." CP at 35. The preprinted inquiry form states that the trial court's written response was given "AFTER AFFORDING ALL COUNSEL/PARTIES OPPORTUNITY TO BE HEARD." CP at 35.

The jury found Stephens guilty as charged, and it returned special verdicts of "yes" on each of the sentence enhancements. Stephens appeals.

## ANALYSIS

### I. RIGHT TO UNANIMOUS VERDICT

Stephens argues that the trial court violated his right to a unanimous verdict by failing to instruct the jury that it had to be unanimous on which knife he used to assault Danielle. We disagree because the State alleged only a single act to support the assault charge and because the particular knife used was not an element of the offense on which the jury was required to unanimously find proof beyond a reasonable doubt.

Article I, section 21 of the Washington State Constitution gives criminal defendants the right to a unanimous jury verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the State presents evidence of multiple acts that could form the basis of the crime charged, either the State must elect to rely on just one of the acts, or the jury must be instructed to reach a unanimous verdict on the specific act that supports a finding of guilt. *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). The State's failure to make such an election or the trial court's failure to properly instruct the jury requires reversal unless the error is

4

harmless beyond a reasonable doubt. *Coleman*, 159 Wn.2d at 512. We review alleged error in jury instructions de novo. *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010).

Stephens relies principally on *Coleman* for the argument that the trial court failed to give a proper unanimity instruction, but *Coleman* is distinguishable. In *Coleman*, a "multiple acts" unanimity instruction[2] was required because Coleman was charged with two counts of child molestation against two victims, and there was evidence of multiple acts of molestation of each victim. 159 Wn.2d at 511, 514. But in contrast here, there was evidence of only one act of assault of one victim.

Stephens also cites *State v. Vander Houwen*, 163 Wn.2d 25, 38, 177 P.3d 93 (2008), but that case is also distinguishable. There, Vander Houwen was charged with unlawfully killing 10 elk. 163 Wn.2d at 30-31. The jury found Vander Houwen guilty of killing two of the elk, but the State did not link any particular elk to any of the charges, nor was the jury instructed that it must be unanimous which elk Vander Houwen killed. 163 Wn.2d at 38-39. Under those facts, where Vander Houwen was charged with separately killing 10 different elk "victims," our Supreme Court held that it was error not to give a "multiple acts" unanimity instruction. 163 Wn.2d at 38-39. But here, again, Stephens was charged with one crime against one victim. *Vander Houwen* is thus distinguishable as well.

---

[2] For ease of reference, we refer to the jury instruction required in "multiple acts" cases, that the jury must be unanimous on which of multiple acts supports the charges, as a "'multiple acts' unanimity instruction."

Here, the evidence showed just one act supporting Stephens's second degree assault with a deadly weapon charge: holding a knife to Danielle's throat. The possibility that Stephens used one of four knives to commit this act does not alter the fact that the assault was a single act. Stephens cites no applicable authority to the contrary and his argument accordingly fails.

Moreover, that the defendant used a particular deadly weapon is not an element of second degree assault with a deadly weapon. RCW 9A.36.021(1)(c). The statute simply requires that the defendant assaulted the victim with "*a* deadly weapon." RCW 9A.36.021(1)(c) (emphasis added). "Where a unanimous verdict is required, as is the case in our state, the jury must unanimously agree that every element of the crime is established beyond a reasonable doubt for convictions to be valid." *State v. Franco*, 96 Wn.2d 816, 832, 639 P.2d 1320 (1982). Because the fact that a specific weapon was used is not an element of second degree assault with a deadly weapon, the jury was not required to unanimously agree on the particular knife Stephens used. Here, the State presented almost no evidence as to which knife Stephens used to assault Danielle. But the jury could have validly concluded that even though the State had not proved *which* knife Stephens used beyond a reasonable doubt, it had proved beyond a reasonable doubt that he used *a* knife. The trial court accordingly did not err by failing to give a "multiple acts" unanimity instruction as to the weapon used.

Only a single act supported the State's charge against Stephens, and the exact knife was not an element of the crime charged. As such, unanimity was not required on which particular knife Stephens used, and a "multiple acts" unanimity instruction was not required. We affirm Stephens's second degree assault conviction.

## II. RIGHT TO PUBLIC TRIAL

Stephens next argues that the trial court violated his right to a public trial by closing the courtroom in order to play the 911 tape for the jury. He also argues that the trial court violated his right to a public trial by answering the jury's request to view the knife without any public hearing on the matter.[3] Because the right to a public trial was not implicated in either instance, we disagree.

The Sixth Amendment to the federal constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a public trial. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005). Whether a defendant's right to a public trial has been violated is a question of law, reviewed de novo. *Brightman*, 155 Wn.2d at 514.

A trial court generally errs by failing to analyze the five *Bone-Club*[4] factors on the record before closing the courtroom. *See State v. Easterling*, 157 Wn.2d 167, 175, 137 P.3d 825 (2006). But we cannot determine whether there has been a "closure" for public trial purposes without first addressing whether the proceeding at issue implicated the right to a public trial in the first place. *State v. Sublett*, No. 84856-4, slip op. at 12, 2012 WL 5870484 (Wash. Nov. 21, 2012). We address this question under the "experience and logic" test. *Sublett*, slip op. at 14-15. The experience prong of this test asks "'whether the place and process have historically been open to the press and general public.'" *Sublett*, slip op. at 15 (quoting *Press-Enter. Co. v. Superior*

---

[3] Stephens also argues that the trial court violated the public's right to open court proceedings under article I, section 10 of the Washington Constitution. But the analysis for this issue mirrors that for the defendant's right to a public trial. *State v. Easterling*, 157 Wn.2d 167, 175, 137 P.3d 825 (2006). And Stephens provides no separate analysis regarding the public's right to an open trial. As such, we do not address the public's right to an open trial.

[4] *State v. Bone-Club*, 128 Wn.2d 254, 258-60, 906 P.2d 325 (1995).

*Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The logic prong asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, slip op. at 15 (quoting *Press-Enter.*, 478 U.S. at 8). If both questions are answered in the affirmative, then the right to a public trial is implicated. *Sublett*, slip op. at 15.

The *Sublett* court addressed whether a trial court's response to jury questions regarding the jury instructions implicated the right to a public trial, concluding that such proceedings do not satisfy the experience prong of the experience and logic test. *Sublett*, slip op. at 18. The court noted that under CrR 6.15(f)(1), a trial court's responses to jury inquiries must be made part of the record, but the rule does not specify how, i.e., does not specify that responses must be put on the record in open court. *Sublett*, slip op. at 19-20. The court found that CrR 6.15(f)(1) is the only authority governing the response to a jury inquiry, showing that there is no historical requirement that such proceedings be conducted in open court. *Sublett*, slip op. at 20. Under this holding of *Sublett*, Stephens's public trial arguments fail.

A.    *Playing 911 Tape in Closed Court*

There is no question that the trial court closed the courtroom without conducting a *Bone-Club* analysis when it played the 911 recording for the jury. While no Washington court has addressed this precise situation, we hold that the jury's listening to an already-admitted piece of evidence during a pause in deliberations did not implicate Stephens's right to a public trial. Just as in *Sublett*, CrR 6.15(f)(1) does not show that there is any historical right for the public to be present during such a proceeding. Stephens's argument accordingly fails the experience prong of the experience and logic test.

As the *Sublett* court noted, CrR 6.15(f)(1) vests the trial court with discretion how to respond to jury questions. *Sublett*, slip op. at 20. "The court shall respond to all questions from a deliberating jury in open court or in writing. In its discretion, the court may grant a jury's request to rehear or replay evidence, but should do so in a way that is least likely to be seen as a comment on the evidence, in a way that is not unfairly prejudicial and in a way that minimizes the possibility that jurors will give undue weight to such evidence." CrR 6.15(f)(1).

Thus, not only does CrR 6.15(f)(1) give a trial court discretion as to how it puts its responses to a jury question on the record, CrR 6.15(f)(1) *also* gives the trial court discretion in how the court permits the jury to rehear evidence. There is no authority aside from CrR 6.15(f)(1) regarding the manner in which a trial court permits a jury to rehear evidence. As such, just as in *Sublett*, we cannot conclude that the jury's rehearing of evidence is a process that has "'historically been open to the press and general public.'" *Sublett*, slip op at 15 (quoting *Press-Enter.*, 478 U.S. at 8).

We thus hold that the jury's rehearing of evidence in the courtroom fails the experience prong of the experience and logic test. The proceeding did not implicate Stephens's right to a public trial, and his argument on this point fails.

B.     *Jury's Request To See the Knife*

As to the trial court's response to the jury's request to see the knife, *Sublett* is directly on point. *Sublett* explicitly held that the public trial right is not implicated by a trial court's addressing a jury inquiry. *Sublett*, slip op. at 20-21. There is no distinction between the jury inquiry here and that addressed in *Sublett*. Stephens's argument on this point is without merit under *Sublett*.

### III. DEFENDANT'S RIGHT TO BE PRESENT

Stephens finally argues that the trial court violated his right to be present during the critical stages of trial when the trial court responded to the jury's request to see the knife without his presence. Because the record does not support Stepehens's claim that he was absent for the trial court's response to this request, we do not address this issue.

A criminal defendant has the constitutional right to be present at all critical stages of trial. *State v. Irby*, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011). A defendant's right to be present attaches "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934)). It does not attach when the defendant's presence "'would be useless, or the benefit but a shadow.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 106-07). We review de novo whether the defendant's right to be present has been violated. *Irby*, 170 Wn.2d at 880.

However, under *State v. Jasper*, 174 Wn.2d 96, 123-24, 271 P.3d 876 (2012), appellate courts will not presume a defendant's absence based solely on the lack of a record to show his presence. Jasper argued that the trial court violated his right to be present by responding to a jury inquiry in his absence. 174 Wn.2d at 124. Our Supreme Court noted that

> "[o]n a partial or incomplete record, the appellate court will presume any conceivable state of facts within the scope of the pleadings and not inconsistent with the record which will sustain and support the ruling or decision complained of; but it will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent."

174 Wn.2d at 123-24 (quoting *Barker v. Weeks*, 182 Wash. 384, 391, 47 P.2d 1 (1935)).

The only evidence of Jasper's absence during the trial court's response to the jury inquiry was the eight minute delay between the question and response, and the absence of an entry in the court's minutes indicating that Jasper was present. 174 Wn.2d at 124. Furthermore, the court's response to the jury inquiry contained the preprinted statement that the trial court contacted the parties before responding. 174 Wn.2d at 124. Noting that the trial court had signed the form bearing this pre-printed statement, the Supreme Court held, "[W]e do not lightly assume that a judge falsely attaches a signature to a court form." 174 Wn.2d at 124. Under such facts, the Supreme Court declined to consider Jasper's argument that the trial court violated his right to be present by responding to the jury inquiry in his absence. 174 Wn.2d at 124.

Here, as in *Jasper*, there is no record of a conference on the jury inquiry at issue, aside from the preprinted form stating that the trial court had contacted the parties and counsel. The only distinction between the instant case and *Jasper* is that Jasper was not in custody during his trial, while here, the record is silent as to whether Stephens was in custody during his trial. 174 Wn.2d at 124.

However, despite this distinction, the rationale of *Jasper* applies. In the absence of a record, we do not presume a violation of the right to be present. Stephens relies on nothing more than the absence of a record that he was present to show that he was not present. While the State does not contest that Stephens was absent, neither does it explicitly concede the issue. As in *Jasper*, we decline to consider Stephens's right to be present claim based on this inadequate record.

No. 41904-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Quinn-Brintnall, J.

_____
Penoyar, J.